UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**LARRY A. BRATTON,**

                                          **Plaintiff,**

                        **-v-**                                **9:02-C V-1557**

**GLENN S. GOORD, Commissioner of**
**Corrections; M. WILLIAMS, Superintendent**
**of Willard Drug Treatment Campus;**
**COUNSELOR KETCHUM; P.O. SMITH;**
**COUNSELOR STONE; COUNSELOR**
**THOMAS; COUNSELOR BOUCHARD;**
**LICHAK; MIKULSKI, Network Administrator;**
**and SERGEANT SHAW,**

                                          **Defendants.**
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Larry A. Bratton
Plaintiff *Pro Se*

Hon. Eliot Spitzer, Attorney General, State of New York
Senta B. Siuda, Esq., Assistant Attorney General
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455
Attorney for Defendants

**Hon. Norman A. Mordue, D.J.:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

        Plaintiff, an inmate in the custody of the New York State Department of Correctional

Services ("DOCS"), commenced this action under 42 U.S.C. § 1983 on December 16, 2002.  In

his amended complaint (Dkt. No. 6), filed March 28, 2003, he claims that defendants – a DOCS

employee and nine employees of the Willard Drug Treatment Campus ("Willard") – violated his

First and Fourteenth Amendment rights.  Plaintiff moved for partial summary judgment and class

certification (Dkt. No. 57) and defendants cross-moved for summary judgment (Dkt. No. 74).

The motions were referred to United States Magistrate Judge David R. Homer for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c). Magistrate Judge Homer recommends that plaintiff's motion be denied and defendants' cross-motion be granted.

Plaintiff has interposed a number of objections (Dkt. Nos. 119, 120). Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court conducts a *de novo* review of those parts of a Report and Recommendation to which a party specifically objects. Where only general objections are filed, the Court reviews for clear error. *See Brown v. Peters*, 1997 WL 599355,*2-*3 (N.D.N.Y.), *aff'd without op.*, 175 F.3d 1007 (2d Cir. 1999). Failure to object to any portion of a Report and Recommendation waives further judicial review of the matters therein. *See Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993).

## FACTUAL BACKGROUND

The Court adopts Magistrate Judge Homer's summary of the factual background which is as follows:

> On December 6, 2001, Bratton was sentenced in Schenectady County Court to an indeterminate term of three and one-half to seven years imprisonment for criminal sale of a controlled substance in the fifth degree. Pursuant to N.Y. Crim. Proc. Law § 410.91, the County Court ordered that Bratton's sentence be executed as a sentence of parole [supervision]. It was mandated that Bratton be delivered to a DOCS reception center for a period not to exceed ten days and then placed under the supervision of the New York State Division of Parole at Willard for a period of ninety days.
>
> Bratton arrived at the reception center of Ulster County Correctional Facility on May 20, 2002. Bratton was then placed in the custody of Willard on May 28, 2002 and was placed on "reception status" until June 3, 2002, which became his admission date. Based on the admission date of June 3, 2002, Bratton's initial release date was calculated as September 3, 2002. The six days from May 28 to June 2, 2002 were not used in calculating Bratton's release date.

On June 6, 2002, Bratton was given an "Individual Case Memorandum" for failure to have a specified book during academic testing. On June 14, 2002, Bratton received another memorandum for disobeying a rule prohibiting talking to others during school. On June 24, 2002, Willard staff reported that Bratton was disrespectful to staff, provided unneeded feedback, had a negative attitude, used a medical slip as an excuse, and did not follow staff direction. Bratton alleges that on June 31, 2002, defendant Ketchum and other staff members confronted Bratton and questioned his use of the law library. On July 11 and 31, 2002, Bratton received two additional memoranda for being disrespectful to staff, talking over staff despite being directed to cease, and was informed that he would be referred to the Evaluation Review Committee ("ERC").

On August 8, 2002, Bratton appeared before the ERC, which found that Bratton had four negative memorandums, failed seven out of eight evaluations, failed two learning experiences, had incomplete work, showed minimal effort, and refused a "recycle opportunity" even though he was aware that such a refusal would result in removal from the program. On August 13, 2002, Bratton reappeared before the ERC, agreed to a "recycle opportunity," and his release date was recalculated to October 1, 2002.

Bratton alleges that on August 16, 2002, he was confronted by defendants Lichak, Stone, Thomas, and Mikulski and that they harassed him, pulled on his shoelaces leaving an impression on his foot, and examined his back and shoulders in a racially intimidating manner. On August 22, 2002, Bratton received a negative memorandum for improper materials in his binder. On September 19, 2002, the ERC staff recommended that Bratton's stay be extended for another four weeks and Bratton agreed. Bratton alleges that at this meeting, defendants Smith, Mikulski, and Shaw asked him if he had shaved and defendant Stone plucked the whiskers that remained around Bratton's mouth. On September 21, 2002, Bratton wrote letters to state assemblymen complaining of the treatment he received at Willard. On October 29, 2002, Bratton was released from Willard to parole supervision. This action followed.

(Citations to record and footnotes omitted.) With respect to a "recycle opportunity," Magistrate Judge Homer explains as follows: "A parolee may be referred for an ERC [Evaluation Review Committee] appearance if he or she has received negative evaluations or poor progress reports. The ERC may recommend that a parolee be given an opportunity to 'recycle' or extend his or her stay as an alternative to removal from the program."

### SUMMARY JUDGMENT STANDARD

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

Where, as here, a party is proceeding on a *pro se* basis, the Court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted). Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996). Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts. *See* Fed.R.Civ.P. 56(e); *see also Jermosen v. Coughlin*, 877 F.Supp. 864, 867 (S.D.N.Y. 1999) (*pro se* plaintiffs must make proper evidentiary showing in order to defeat summary judgment).

## DISCUSSION

In the Report and Recommendation, Magistrate Judge Homer first addresses plaintiff's motion for partial summary judgment. Plaintiff seeks a declaration that the calculation of his admission date at Willard was illegal. He also requests that the action proceed as a class action. The Court agrees with Magistrate Judge Homer's treatment of these issues and his conclusion that they lack merit.

With respect to defendants' motion for summary judgment dismissing the action, Magistrate Judge Homer first discusses plaintiff's claims that he was denied due process. Magistrate Judge Homer points out that completion of the program at Willard was a condition of plaintiff's parole. If plaintiff had been removed from the Willard program and charged with a parole violation for failure to complete the program, he would have been entitled to a parole revocation hearing. However, plaintiff agreed to extend his stay at Willard. Thereafter, he completed the program and was not charged with a parole violation, nor was his parole revoked. There is no deprivation of a liberty interest that would require a hearing. Giving plaintiff's papers the most liberal reading and interpreting them to raise the strongest arguments, the Court agrees with Magistrate Judge Homer that plaintiff's due process claims lack merit.

Turning to plaintiff's equal protection claim, the Court adopts Magistrate Judge Homer's summary of applicable law. In his objection to Magistrate Judge Homer's recommendation of summary judgment dismissing the equal protection claim, plaintiff states that he requested but was not provided with documents showing "that other parolees who received the same number of failing evaluations as the plaintiff or more for the same period of time were not referred to ERC, including one parolee who was assigned to the same counselor as the plaintiff and shared a room with him." Even assuming that plaintiff could have produced documents to this effect, such would not be sufficient to make out a claim that he was similarly situated to the others. Nor is there any showing that any difference in treatment was irrational or intentionally discriminatory. The Court agrees with Magistrate Judge Homer that there is no factual support for an equal protection claim.

With respect to plaintiff's claim that he was deprived of his right of access to the courts, this Court agrees with Magistrate Judge Homer's conclusion that plaintiff failed to show an

actual injury. The two orders to show cause which plaintiff claims he was prevented from serving did not concern challenges to his conviction or sentence, nor is there anything to indicate that they otherwise concerned claims of a type protected by a right of access to the courts. *See generally Lewis v. Casey*, 518 U.S. 343, 350-55 (1996); *Bourdon v. Loughren*, 386 F.3d 88, 93, 98 (2d Cir. 2004).

The Court agrees with Magistrate Judge Homer that, construed in a light most favorable to plaintiff, plaintiff's allegations fall far short of making out a claim of excessive force. The Court has reviewed *de novo* all issues raised by plaintiff in his objection to the Report and Recommendation, and concludes that they lack merit.

## CONCLUSION

It is therefore

ORDERED that the Report and Recommendation of United States Magistrate Judge David R. Homer is approved and adopted in all respects; and it is further

ORDERED that plaintiff's motion (Dkt. No. 57) is denied; and it is further

ORDERED that defendants' cross motion for summary judgment (Dkt. No. 74) is granted and the action is dismissed.

IT IS SO ORDERED.

February 3, 2006
Syracuse, New York

Norman A. Mordue
U.S. District Judge

-6-